UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X

MICHAEL FLEMING,

                Plaintiff,

  -against-

EILEEN CASEY and ISABELLA GERIATRIC
CENTER,

                Defendants.
---------------------------------------------------------------- X

04 CV 778 (ARR)

NOT FOR PRINT OR
ELECTRONIC
PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

In this action, plaintiff Michael Fleming ("plaintiff") brings suit against defendants Eileen Casey ("Casey") and Isabella Geriatric Center ("IGC") (collectively, "defendants") pursuant to 42 U.S.C. §§ 1981, 1983, and 1988. Specifically, plaintiff seeks relief for defendants' allegedly discriminatory termination of his employment as a security guard with IGC. At this time, the court considers defendants' motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, defendants' motions are granted and plaintiff's claims are dismissed as a matter of law.

## BACKGROUND

Unless otherwise noted, the parties do not contest the following facts. IGC is a non-profit and non-sectarian organization, governed under the laws of New York State, that provides care for the elderly, disabled, and terminally ill. Compl. ¶ 4; Casey Aff. ¶ 2. At all times relevant to this action, Casey has been employed as Vice-President of Human Resources at IGC. Casey Aff. ¶ 1. Plaintiff, an African-American male, was employed by IGC as a security officer from

1

approximately December 1, 1989 to February 22, 2001. Compl. ¶¶ 5, 19; Casey Aff. ¶¶ 4, 21. On February 13, 2001, plaintiff was sent home shortly after he arrived to work and subsequently suspended. Compl. ¶¶ 6-9; Casey Aff. ¶ 12. According to defendants, plaintiff has been repeatedly late for work, including on February 13, 2001. Casey Aff. ¶¶ 7, 10-12. Furthermore, defendants maintain that plaintiff had received numerous written warnings and suspensions for his tardiness prior to the February 13, 2001 suspension. Casey Aff. ¶¶ 7, 10-12. While plaintiff attributes any tardiness on his time sheets to an allegedly faulty time clock, Ptf. Dep. at 69, he concedes that he had received warnings about being late to work. Id. at 57.

On February 20, 2001, plaintiff and Donald Fleming, Director of Security Services at IGC, were scheduled to meet and discuss plaintiff's employment status. Compl. ¶ 13; Casey Aff. ¶ 13. However, plaintiff did not attend the February 20, 2001 meeting. Compl. ¶ 15; Casey Aff. ¶ 13. According to plaintiff, he was not prepared to meet with Mr. Fleming on that date because he was not finished drafting a formal demand for a grievance hearing. Compl. ¶ 14. Plaintiff, however, did serve his written demand for a grievance hearing on defendants shortly thereafter. Compl. ¶ 12; Casey Aff. ¶ 15. Plaintiff claims that IGC has granted grievance hearings to two white employees in the past. Compl. ¶ 20; Ptf. Dep. at 73. The demand contained preconditions to any meeting with plaintiff, which required that defendants answer forty-six interrogatories and agree to allow a witness to attend the grievance hearing. Compl. ¶ 12; Casey Aff. ¶ 15. Defendants concede that IGC has a three-step grievance procedure for non-union employees, which requires that a complaining employee's immediate supervisor, the department head, and the director of human resources be available to meet with the employee. See IGC Grievance and Complaint Procedure (Casey Aff. Ex. 2). Defendants maintain, however, that IGC has never

agreed to the type of preconditions for a hearing demanded by plaintiff. Casey Aff. ¶ 19. On February 22, 2001, defendants terminated plaintiff. Id. ¶ 21; Compl. ¶ 19. Plaintiff concedes that defendants explained in a written letter that his termination was, in part, based on his "ongoing lateness problem." Ptf. Dep. at 68 (quoting letter from Casey to plaintiff dated February 22, 2001 (Casey Aff. Ex. 16)).

Plaintiff filed his pro se complaint on February 20, 2004. Discovery was completed on June 20, 2005. See Order dated May 31, 2005. Defendants filed their motion for summary judgment on November 4, 2005. Plaintiff, however, failed to respond to defendants' motion, in spite of the court's decision to grant plaintiff's extension request. See Order dated Nov. 4, 2005. By order dated November 23, 2005, the court directed plaintiff to file his opposition papers by December 2, 2005 and cautioned plaintiff that a failure to do so would mean that the court would consider defendants' summary judgment motion unopposed. See Order dated Nov. 23, 2005. Plaintiff has failed to comply with the court's order. Thus, the court will consider defendants' motion for summary judgment unopposed.

## DISCUSSION

A. Standard for Summary Judgment

Under Rule 56, summary judgment is proper if the pleadings, depositions, answers, interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome of the litigation if application of the relevant substantive law requires their determination. See Anderson v. Liberty

Lobby, 477 U.S. 242, 248 (1986). The moving party has the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex Corp. v. Cartrett, 477 U.S. 317, 323 (1986). The substantive law determines the facts that are material to the outcome of a particular litigation. See Anderson, 477 U.S. at 250; Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975). In determining whether summary judgment is appropriate, a court must resolve all ambiguities, and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

If, as is applicable here, a non-moving party fails to oppose a summary judgment motion, then "summary judgment, if appropriate, shall be entered against" him. Fed. R. Civ. P. 56(e). The Second Circuit has emphasized, however, that "where the non-moving party 'chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'" Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (quoting Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001)). Moreover, "[a]n unopposed summary judgment motion may also fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." Id.

B. Plaintiff's Claims

1. Section 1983 Claims

A liberal reading of plaintiff's complaint suggests that plaintiff is making several claims under § 1983. First, plaintiff contends that defendants deprived him of his rights to due process and equal protection under the Fourteenth Amendment of the Constitution by granting white employees grievance hearings, while denying such procedures to African-American employees. Second, plaintiff alleges that defendants impaired contractual obligations in violation of his rights under Article I, Section 10 of the Constitution. Defendants argue that plaintiff's claim under § 1983 should fail as a matter of law because plaintiff has not established that defendants are state actors or private parties acting under color of state law. Reviewing the record in the light most favorable to the non-moving party, the court agrees that plaintiff has failed to establish that IGC and its employees acted under color of state law.

The mere fact that IGC is incorporated under the laws of the State of New York or licensed to do business in New York, see Casey Aff. ¶ 2, does not make it a state actor. See Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (holding mere fact of state regulation insufficient to make nursing home a state actor). Moreover, receipt of public funds, see Compl. ¶ 4, is also insufficient to establish that IGC was acting under the color of state law. See, e.g. Polk County v. Dodson, 454 U.S. 312, 320-21 (1981) (holding that fact that state pays public defenders insufficient to establish that public defenders act under color of state law). Private conduct, no matter how discriminatory or wrongful, is generally beyond the reach of § 1983. See Brentwood Academy v. Tennessee, 531 U.S. 288, 304-05 (2001) (discussing whether athletic association was state actor within reach of § 1983); American Mfrs. Mut. Ins. Co. V. Sullivan, 526 U.S. 40, 49 (1999) (stating § 1983 claim requires deprivation committed under color of state law); Blum, 457 U.S. at 1002 (stating purely private conduct "however discriminatory or wrongful" not

actionable under Fourteenth Amendment); Rendell-Baker v. Kohn, 457 U.S. 830, 838-42 (1982) (affirming dismissal of § 1983 claim because defendants not state actors); Flagg Bros. Inc. v. Brooks, 436 U.S. 149, 155-57 (1978) (stating § 1983 reaches only deprivations of rights by persons acting under color of law); Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 173 (1972) (distinguishing private conduct from state action).

Thus, the fact that IGC is a publicly regulated entity that receives some state and federal funds is insufficient as a matter of law to establish state action under § 1983. Given that plaintiff has offered no additional evidence creating a genuine issue of material fact as to whether defendants acted under color of state law, the claims against IGC and its agents under § 1983 must be dismissed.

2. Section 1981 Claim

Plaintiff claims that defendants terminated his employment in violation of 42 U.S.C. § 1981 because IGC allegedly grants grievance hearings to white employees but does not grant the same procedures to African-American employees. Defendants argue that plaintiff's claim under § 1981 must be dismissed because plaintiff has failed to even establish a prima facie case of discrimination or, in the alternative, that plaintiff has failed to demonstrate that defendant's non-discriminatory reasons for termination were merely pretextual. Assuming arguendo that plaintiff has established a prima facie case of discrimination, the court concludes that plaintiff has failed to allege facts sufficient to rebut defendants' evidence that he was terminated for non-discriminatory reasons.

Claims of employment discrimination brought under § 1981, like those brought under Title VII, are governed by the evidentiary burden-shifting framework established in McDonnell

Douglas Corp. v. Green, 411 U.S. 792 (1973). See Taitt v. Chemical Bank, 849 F.2d 775, 777 (2d Cir. 1988) (referring to claims of retaliatory discharge). "[A] plaintiff must first establish a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class." Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005) (quoting Mario v. P & C Food Markets, Inc., 313 F.3d 758, 767 (2d Cir. 2002)).

Once the plaintiff satisfies his initial "minimal" burden, see St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993), "the burden of production shifts to the employer 'to articulate some legitimate, nondiscriminatory reason for the'" termination, O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 311 (1996) (quoting McDonnell Douglas, 411 U.S. at 802). If the employer carries this burden of production, the plaintiff must demonstrate by competent evidence that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). A plaintiff's showing of pretext, however, does not automatically defeat a motion for summary judgment by the defendants: "Evidence that the defendant's articulated nondiscriminatory reason is false, when added to the prima facie case, may or may not be 'sufficient to support a reasonable inference that prohibited discrimination occurred' and warrant submitting the case to the jury." Farias v. Instructional Sys., Inc., 259 F.3d 91, 98-99 (2d Cir. 2001) (quoting James v. New York Racing Ass'n, 233 F.3d 149, 156 (2d Cir.2000)).

Assuming arguendo that plaintiff has satisfied his "minimal" burden of establishing a prima facie case of discrimination,[1] the court proceeds to determine whether defendants have offered legitimate, non-discriminatory reasons for not granting plaintiff a grievance hearing before his termination. At his deposition, plaintiff testified that he tentatively scheduled a meeting with defendants conditioned on their approval of the terms of his formal request for a grievance hearing, which included that a witness of plaintiff's choosing attend the hearing. Ptf. Dep. at 229-30. In her affidavit, Casey attests that IGC has never granted a grievance hearing with such preconditions. Casey Aff. ¶ 19. Moreover, she attests that had plaintiff sought to meet with her without such preconditions, he would have received a grievance hearing prior to termination. Id. ¶ 18. Thus, defendants have sufficiently articulated a legitimate, non-discriminatory reason for terminating plaintiff without a grievance hearing. Although plaintiff alleges that two white employees have received grievance hearings, Ptf. Dep. at 78-79, he fails to demonstrate that they had such hearings under the terms that plaintiff demanded. Plaintiff has therefore failed to show that defendants' non-discriminatory reason was merely pretextual because there is simply no evidence that defendants treated similarly situated employees differently due to their race.

---

[1] Plaintiff has satisfied the first three elements of a prima facie case of discrimination: (1) he is African American and therefore a member of a protected class; (2) he testified that he performed his work satisfactorily, but he was improperly deemed late to work on many occasions due to a malfunctioning time clock; and (3) he was terminated and therefore subject to adverse employment action. Plaintiff has arguably satisfied the fourth element of a prima facie case discrimination by testifying that, unlike two white employees, he was not granted a grievance hearing before his termination. Given that defendants have offered an unrebutted legitimate non-discriminatory reason for terminating plaintiff without such a procedure, the court need not decide whether plaintiff has established a prima facie case of discrimination.

As a result, the court dismisses plaintiff's claim under § 1981. Given that the court dismissed plaintiff's claims under § 1981 and § 1983, the court also dismisses plaintiff's claim for attorneys' fees under § 1988.

## CONCLUSION

On the record before the court, it is clear that defendants were not acting under color of state law and thus plaintiff's claims under § 1983 must be dismissed as a matter of law. In addition, reviewing the evidence in the light most favorable to the non-moving party, plaintiff's employment discrimination claim under § 1981 also fails as a matter of law. For the foregoing reasons, defendants' motions for summary judgment are granted. The court therefore dismisses all claims against defendants ICG and Casey. The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

                                                              Allyne R. Ross
                                                              United States District Judge

Dated: January 9, 2006
       Brooklyn, New York

SERVICE LIST:

<u>*Pro Se* Plaintiff</u>

Michael Fleming
257 Putnam Avenue
Brooklyn, NY 11216

<u>Defendants' Counsel</u>

Brian S. Rauch
Proskauer Rose LLP
1585 Broadway
New York, NY 10036

10